————o————

JOHN B. WELLS, Appellant, *vs.* CHARLES A. PERRY, Respondent.

1. *Equity—Stale demands—Excuses.*—Equity will not countenance the prosecution of stale demands, unless there be some attendant circumstances which will excuse the seeming laches, and palliate the apparent delay.

2. *Limitations, statute of—Trust, breach of—Assignment of goods—Creditor.*—The statute of limitations is a good defense to a suit brought against a trustee to whom goods were assigned to be sold for the payment of debts, when there was a breach of the trust about the time of the assignment with the knowledge of the creditor, twelve years before suit brought.

*Appeal from Buchanan Circuit Court.*

*B. Loan* and *B. R. Vineyard,* with *James J. Hitt,* for Appellant.

This was a continuing trust, and no lapse of time will bar the action. (27 Mo., 591; 39 Mo., 292; Johns. Ch. R., 190, 384, and cases cited.)

*Allen H. Vories,* for Respondent.

I. The statute of limitations bars the action. (Johnson vs. Smith, 27 Mo., 591; Keeton vs. Keeton, 20 Mo., 530; Benton vs. Lindell, 10 Mo., 557; Smith vs. Ricords, 52 Mo., 581; Ricords vs. Watkins, 56 Mo., 553.)

II. The long time and acquiescence of plaintiff and his failure to assert his rights, if any he had; his conduct, and acts and silence for eleven years, are strong presumptions against him, and a court of equity will not relieve him. (Taylor v. Blair, 14 Mo., 437; Moreman vs. Talbott, 55 Mo. 397.)

SHERWOOD, Judge, delivered the opinion of the court.

Wells, the plaintiff, instituted this suit January 3, 1871, against Perry, the trustee in a deed of assignment made May 9, 1859.

The other defendants (with the exception of Paxton, the administrator of Merritt L. Young, deceased) were beneficiaries under the deed, who refused to join with the plaintiff in the prosecution of his suit, the object of which was to enforce the performance of duties, which, the petition alleges, were offered and accepted by the trustee by his signing and acknowledging the deed, taking charge of the property conveyed, and selling the same.

This deed, though mentioned in the petition as filed therewith, and stated in the bill of exceptions to have been read in evidence, has been omitted from the record. The same may be said of the deposition of C. P. Armstrong. It appears, however, from the petition, that, by the terms of the deed referred to, it was made the duty of the trustee, to whom Merritt L. Young had transferred a stock of goods at Atchison, Kansas, worth some $30,000, to sell the same at Salt Lake City, and out of the proceeds of the sale thus made to pay all advancements, the costs and charges of transporting the goods to the point last named, then to pay the plaintiff the amount due on two promissory notes for $1,000 each, dated April 20, 1859, and due one day thereafter, executed to plaintiff by Young, afterwards to pay certain other debts, and, if there were any residue, to pay the same to the grantor in the deed, etc. It is also alleged, that Perry took the property to its point of destination and realized from its sale about $30.000, an amount sufficient to pay all advancements, charges, etc., and the debt of plaintiff; that Young died in 1864 insolvent; that Perry, though often requested, failed and refused to pay plaintiff's claim. An accounting is asked, judgment for the amount due on the notes, and for general relief.

The answer of Perry pleaded the statutory bar of ten years; denied that he ever accepted the trust, took possession of or

sold the goods, and charged that the deed mentioned in the petition was a "sham affair," gotten up at the instigation of Wells himself for the purpose of hindering, delaying and defrauding certain creditors of Young, who resided in Platte county, and were suing out attachments and having them levied on these goods; that Young, with plaintiff's knowledge and consent, retained possession of the goods, took them to Salt Lake at his own expense, and sold them on his own individual account; and the answer further alleged that plaintiff sent one J. B. Evans to Salt Lake to collect his debt, and that Evans did so. A reply was filed.

The evidence in this cause abounds in contradictions; portions of the testimony give some support to the allegations of the petition, while other portions uphold the statements of the answer. But we are of opinion, after a very careful perusal of the evidence, that it greatly preponderates on the side of the defendant, Perry. It would indeed be difficult to carefully examine the evidence adduced, without arriving at the confident conclusion, that the assignment made by Young was, as alleged by the answer, "a sham affair," and that Wells was an active participant therein.

Perry's testimony, that he never took charge of the goods, was not to have any control of them, and that his acceptance of the trust was a mere formal matter, is fully supported by the testimony of Lawson, who drew the deed, that it was not contemplated that Perry ever would have such custody or control. And testimony also is not wanting strongly tending to establish that Evans, the brother-in-law of Wells, went out to Salt Lake in the double capacity of a clerk to Young and as the agent of Wells, for the protection of the latter's interests and the collection of his debt; and that the debt was in reality collected.

And if Evans was the agent of Wells in this regard, and failed to conform to the duties imposed by his agency, this certainly can form no just ground for complaint against Perry, who had no concern in the matter.

But if Evans acted only as the mere clerk of Young, and Wells permitted Young to depart with the goods in his own custody, and not under the supervision or control of the trustee, any complaint by Wells, on the score of that at which he himself actively connived, must be equally groundless; and, if, too, the deed of assignment and its acceptance were but thin disguises for baffling other creditors of Young, Wells would occupy but a very indifferent attitude, when invoking the aid of a court of equity for the enforcement of a trust, which never had anything more than an imaginary existence.

But granting, that the transaction was *bona fide*, granting that Wells, in securing his own claim, had no intent to do more than to make himself a preferred creditor, which he might lawfully do, so long as cherishing no design against the rights of others; still what excuse does he offer for his great delay in the assertion of his rights? None whatever. According to his own theory, this is not a case of continuing trust, for the trust was broken, if broken at all, about the time of its formation; and from that time to the institution of this suit nearly twelve years had elapsed. He says he never knew of an assignment having been made, until after the return of Evans from Salt Lake. But this occurred in October, 1859.

The plaintiff says further, that he did not sue Evans on the note on which he was the surety of Young, because he thought Perry had the proceeds of the sale of the goods and ought to pay it, and that he had been trying to collect the money from Perry for ten years.

It is a doctrine of universal recognition with courts of equity, that they will not countenance the prosecution of stale demands, unless there be some attendant circumstances which will excuse the seeming laches, and palliate the apparent delay.

There is nothing in this record having any tendency in this direction. So that, were we to lose sight of the statutory bar, which the defendant properly pleaded, the gross laches exhibited by the plaintiff, would of itself be equally

potent in precluding him from obtaining equitable relief. But leaving out of view the limitation of the statute, and the great negligence of the plaintiff, the action of the court below may well receive our sanction upon other considerations already adverted to.

We shall therefore affirm the decree, dismissing the plaintiff's petition. Judges Vories and Wagner absent; the other judges concur.